UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IVOCLAR VIVADENT, INC.,                                  04-CV-0261E(Sc)
                     Plaintiff,


          -vs-


TRI-COUNTY DENTAL SUPPLY, INC.,                          MEMORANDUM
                     Defendant and
                     Counterclaimant,                         and


          -vs-                                            ORDER[1]


IVOCLAR VIVADENT, INC,
                     Counterdefendant,
          and
IVOCLAR VIVADENT, A.G. and
PETERSON DENTAL SUPPLY, INC.,
                     Additional Counterdefendants.

_____


## INTRODUCTION AND BACKGROUND

          Plaintiff Ivoclar Vivadent, Inc. ("Ivoclar") commenced this action and three

others[2] on April 5, 2004 against defendant Tri-County Dental Supply, Inc. ("Tri-

County") and the other defendants in those actions, alleging, *inter alia,* trademark

infringement and dilution (15 U.S.C. §§1114 & 1125), unlawful importation (15

U.S.C. §1124 and 19 U.S.C. §1526), misappropriation and unfair competition with

regard to certain of its registered and unregistered trademarked dental products.

_____

          [1] This decision may be cited in whole or in any part.

          [2] Case numbers 04-CV-0262E(F), 04-CV-0263E(F) and 04-CV-0264E(F).  All cases have
similar motions pending that will be resolved in similar but separate Orders.

An Amended Complaint was filed on July 27, 2004 (Dkt. #8) and on December 13, 2004 Tri-County filed its answer[3] with counterclaims (Dkt. #13).  On March 8, 2005 Ivoclar filed its reply to the counterclaims (Dkt. #19) and on January 19, 2006 an Acceptance of Tri-County's Offer of Judgment was filed which included money damages and a permanent injunction wherein Tri-County will sell only Ivoclar products that originate either directly from Ivoclar or an Ivoclar-authorized distributor (Dkt. #29).  The counterclaims remain, and before the Court is Ivoclar's motion pursuant to FRCvP 12(c) to dismiss those counterclaims (Dkt. #24).  Also pending before the Court are Tri-County's motion to compel (Dkt. #30) and Ivoclar's motion to stay (Dkt. #35).

The Amended Complaint alleged [4] the following.  Ivoclar is in the business of marketing, distributing and selling dental products nationally and internationally.  Tri-County is a California corporation doing business in New York and also sells and distributes, among other things, dental products.  Ivoclar has valid and inherently distinctive trademarks with regard to its dental products and claims a carefully cultivated reputation for excellent product quality, customer service and reliability.  Ivoclar claimed that Tri-County unlawfully gained possession of some of Ivoclar's products, as enumerated in the complaint, and

---

[3] After the Court denied its motion to dismiss for lack of jurisdiction (Dkt. #12).

[4] The Court refers to the complaint in the past tense because the claims therein have been resolved *via* the Acceptance of the Offer of Judgment. (Dkt. #29).  As stated, *supra,* only the counterclaims remain.

imported them into the United States. Tri-County then sold them for profit and distributed them without the high quality advertising and marketing that Ivoclar demands, with insufficient packaging[5], labeling, inspection, quality control or warranties, hence making them materially different from the products as distributed and sold by Ivoclar.  As such, Ivoclar claimed that its customers were likely to be misled, confused or deceived as to the source of the products and that the distinctive quality of Ivoclar's trademarks and the integrity of its business reputation were threatened.  Ivoclar further alleged that Tri-County refused to stop selling its products or identify its source of supply of such products when so requested by Ivoclar.  The complaint sought, *inter alia*, a permanent injunction, an accounting, constructive trust, treble damages, attorney's fees and costs.

Tri-County's counterclaims seek (1) a judicial declaration under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.* ("the DJA") that Tri-County is not liable to Ivoclar under any of the claims asserted in the complaint and that Ivoclar and the additional named defendants, Ivoclar Vivadent, A.G.(Ivoclar's foreign parent corporation — hereinafter "IvoclarAG") and Peterson Dental Supply (an authorized Ivoclar distributor —  hereinafter "Peterson")[6], are liable to Tri-County for the remaining counterclaims contained therein["Count I"]; (2)

---

[5] *I.e.*, not enclosing the requisite safety information such as the  Material Safety Data Sheets as required by the Occupational Safety and Health Administration.

[6] When referred to collectively, these parties shall be referred to as "the counterclaim defendants".

judgment against the additional defendants for violations of Section 1 of the Sherman Act (15 U.S.C. §1), the Wilson Tariff Act (15 U.S.C. §8) and the New York Donnelly Act(Article 22, section 340 of the New York General Business Law) ["Counts II, III and IV", respectively]; (3) judgment against the counterclaim defendants for tortious interference with prospective and advantageous business relations and civil conspiracy ["Counts V and VI", respectively]; and (4) cancellation of Ivoclar's trademark registrations pursuant to Section 37 of the Lanham Act (15 U.S.C. §1119) ["Count VII"].  The counterclaim defendants have replied to the counterclaims and now move this Court for their dismissal for failure to state a claim upon which relief can be granted.

## DISCUSSION

At the outset, the Court will address the impact of the Acceptance of Offer of Judgment (Dkt. #29), referred to, *supra,* wherein Ivoclar's claims against Tri-County have been resolved.  Insomuch as Count I of Tri-County's counterclaims seeks declaratory relief against Ivoclar on the allegations in the complaint, the Acceptance of the Offer of Judgment renders this claim moot and it shall be dismissed.  This ruling is in no way to be construed as a finding on the individual merits of Ivoclar's claims against Tri-County, as parties "settle" lawsuits for any number of reasons that have nothing to do with the relative merits of the claims. The Court is mindful, however, that a judgment is not a settlement and shall consider such, if necessary, when examining the remaining claims.  Additionally,

but not related to the aforementioned Acceptance, to the extent that Count I seeks declaratory relief for the same counterclaims enumerated in the remaining "Counts", it is duplicative and redundant and shall be dismissed as well. *See generally, Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act ***.") Hence, only Counts II through VII of the counterclaims remain.

The counterclaim defendants have sought a judgment on the pleadings. Judgment on the pleadings pursuant to FRCvP 12(c) is appropriate "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers* v. *M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The standard for granting a Rule 12(c) motion is the same as that of a Rule 12(b)(6) motion for failure to state a claim, in that the district court must accept the allegations in the complaint (or counterclaim, as the case may be) as true and draw all inferences in the non-moving party's favor. *Patel* v. *Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001)*(citing Irish Lesbian & Gay Org.* v. *Giuliani*, 143 F.3d 638, 644 (2d Cir.1998), *Sheppard* v. *Beerman,* 18 F.3d 147, 150 (2d Cir.1994) and *Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n* v. *Bernard M. Baruch Coll.*, 835 F.2d 980, 982 (2d Cir.1987)). In other words, the Court is required to read a complaint generously, accepting the material facts alleged therein as true and

drawing all reasonable inferences from the complainant's allegations.  *California Motor Transp. Co.* v. *Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Frasier* v. *Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

The material facts[7] which form the underpinning of the remaining Counts in Tri-County's counterclaims are as follows.  Tri-County sells genuine Ivoclar Vivadent products at lower prices than the same products sold by Ivoclar and its authorized distributors, including Peterson.  Tri-County gets these products from its supplier, Cargus International, Inc., a New York based importer and distributor of dental supply products[8].  The products Cargus sells to Tri-County are manufactured by IvoclarAG outside of the United States.  They are obtained outside of the United States either from IvoclarAG directly or from one of IvoclarAG's authorized distributors, then imported into the States by Cargus. The cost of the products when purchased in this manner is substantially lower than their cost when purchased inside of the States from Ivoclar.  Tri-County is therefore able to offer and sell them to its customers at competitive prices.  The Ivoclar Vivadent products Tri-County sells are the same as the products Ivoclar and Peterson sell in that they are all manufactured by IvoclarAG.  Tri-County

---

[7] The 104 paragraphs in Tri-County's counterclaims contain some factual allegations and many statements which are neither material nor factual and consist mainly of argument and conclusion.  While the Court will give all reasonable inferences to the alleged facts, only these *facts* will be considered as true and not the arguments and conclusions.

[8] And defendant in companion case 04-CV-0264E(F).

admits, however, that prior to the filing of the instant suit, the products were sold

and distributed without the Material Safety Data Sheets or any warranty.  Since

the filing of suit, it began to include the Data Sheets, a disclaimer of association

with Ivoclar and its own warranty on the products.  The only difference remaining

in the products are minor differences in the labeling and packaging.  When

Peterson discovered that Tri-County was marketing Ivoclar Vivadent trademarked

products to between 4,000 and 5,000 dentists in southern California at discounted

prices, it placed an order for same and, upon receipt, sent the products to Ivoclar.

When Ivoclar determined that the products had not been purchased from either

Ivoclar or Peterson, it informed Tri-County that it did not have permission to sell

the trademarked products, demanded that Tri-County immediately stop their sale

and disclose its supplier information.  Ivoclar did not indicate to Tri-County that

the products it was selling were not genuine or commercially fit for distribution

in the United States, or that they were materially different from the products sold

here through Ivoclar.  Ivoclar stated that if Tri-County did not stop selling the

unauthorized product, legal action would be taken.  When Tri-County did not

comply, Ivoclar filed the instant suit [9].  Less than one month after Ivoclar filed this

suit, Tri-County informed Ivoclar that it considered the suit to be baseless and

requested that it be discontinued.  At the same time, Tri-County offered to provide

---

[9] Along with the three other companion suits referred to herein, *supra*.

disclaimer information to all who purchase the Ivoclar Vivadent products from it indicating that it had no affiliation with Ivoclar and were not authorized to sell its product. Tri-County, also, stated that it would include the Material Safety Data Sheets when shipping the items to the consumers. Ivoclar responded that the disclaimer was insufficient and nevertheless declined to withdraw the suit but again asked for information regarding Tri-County's supplier.

The portion of the Sherman Act, alleged to have been violated in counterclaim Count II, states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. §1.

The portion of the Wilson Tariff Act, alleged to have been violated in counterclaim Count III, states that

> "every combination, conspiracy, trust, agreement, or contract is declared to be contrary to public policy, illegal, and void when the same is made by or between two or more persons or corporations, either of whom, as agent or principal, is engaged in importing any article from any foreign country into the United States, and when such combination, conspiracy, trust, agreement, or contract is intended to operate in restraint of lawful trade, or free competition in lawful trade or commerce, or to increase the market price in any part of the United States of any article or articles imported or intended to be imported into the United States, or of any manufacture into which such imported article enters or is intended to enter."

15 U.S.C. §8.

- 8 -

Section 340 of New York's General Business Law, alleged to have been violated in counterclaim Count IV, similarly declares that

> "1. Every contract, agreement, arrangement or combination whereby
>
>   "A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
>
>   "Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
>
>   "For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void."

N.Y. Gen. Bus. Law §340(1).

All of the counterclaims employ the same factual allegations and legal principles and will be referred to by the Court as the antitrust claims.[10] Moreover, because its claim to cancel the Ivoclar trademarks (Count VII) depends upon the

---

[10] The antitrust provisions of the Wilson Tariff Act follow the same pattern as the Sherman Act and when a party has failed to make out a claim under section 1 of the Sherman Act, any attendant Wilson Tariff Act claim will also necessarily fail. *United States* v. *Cooper,* 312 U.S. 600, 608 (1941); *Hunt* v. *Mobil Oil Corp.,* 550 F2d 68, 75 n. 8 (2d Cir. 1977); *Leider* v. *Ralfe*, 2003 WL 24571746, *2 fn. 3 (S.D.N.Y. 2003).  Further, "New York's Donnelly Act, N.Y.Gen.Bus.L. § 340 is modeled on the Sherman Act, 15 U.S.C. § 1, and generally is construed in accordance with federal precedents. *Solla* v. *Aetna Health Plans of New York Inc.,* 14 F.Supp.2d 252, 259 - 60 (E.D.N.Y. 1998), *citing Re-Alco Industries, Inc.* v. *National Center for Health Education, Inc.,* 812 F.Supp. 387, 393 (S.D.N.Y.1993) and *Anheuser-Busch, Inc.* v. *Abrams,* 71 N.Y.2d 327, 335 (1988).

sufficiency of the antitrust claims, it will also be referred to and decided in

conjunction with the antitrust claims.  The antitrust claims allege violation of the

respective laws by way of a restraint of lawful trade and the elimination of price

competition

> "a.  through vertical price restraints for the purpose of
> fixing and maintaining wholesale and/or retail prices of
> Ivoclar Vivadent trademark products at Ivoclar USA's
> suggested retail price levels that are substantially above
> the price levels at which these products would be
> distributed and sold but for counterclaim defendants'
> unlawful anti-competitive conduct; and
> b.  the bad faith enforcement of Ivoclar Liechtenstein's
> and Ivoclar USA's trademarks through "sham" litigation
> having the overall scheme to unlawfully extend the
> scope of their trademark rights."

(Dkt. #13 - Answer and Counterclaims at ¶¶85 & 90[11]).

The claims allege no facts that the counterclaim defendants directly

attempted to control the price of these products in their interactions with Tri-

County or even between the counterclaim defendants themselves.  For example,

there are no facts alleged that any of the counterclaim defendants ever instructed

Tri-County (or any of its authorized distributors) to sell the products at a certain

price, or that a price directive was ever discussed with anyone.[12]  There are no

---

[11] Count IV, the claim relative to New York's General Business Law, realleges and incorporates all prior allegations and additionally states that "[c]ounterclaim defendants' conduct unlawfully restrains competition and/or the free exercise of Tri-County's business, trade and commerce." (Dkt. #13, ¶ 94).

[12] Although many conclusory allegations to this effect are made, there are no factual allegations in support thereof.

substantive factual allegations against IvoclarAG, only conclusion and argument regarding collusion and conspiracy. Similarly, other than conclusory conspiracy arguments, the only substantive factual allegation against Peterson is that it purchased product from Tri-County and forwarded it to Ivoclar. There are no allegations that the products at issue, consisting of certain Ivoclar Vivadent products, were in any way unique to the market of dental supplies.

From the facts as enumerated above, and in a light most favorable to Tri-County, the Court can only infer that Ivoclar, with minimal assistance from Peterson, attempted to control the distribution of its products (and tacitly, the price thereof) by requiring that they be sold only by authorized distributors under strict quality control and packaging parameters and sued those who attempted to sell the products but were not authorized to do so.

In the motion to dismiss the counterclaims, counterclaim defendants argue as follows that the antitrust claims fail as a matter of law. Tri-County's allegations amount to nothing more than an exclusive distributorship and Ivoclar's attempt to preserve it, which is presumptively lawful. In order to negate this presumption, Tri-County must allege that Ivoclar's attempt to exclude them from distributing the trademarked products satisfies the Rule of Reason analysis. Under the Rule of Reason, Tri-County must plead – and prove – an anticompetitive effect in a relevant market. A relevant market is comprised of a geographic

market which Tri-County has pled (*i.e.*, the United States)[13] and a product market, which Tri-County has not pled.   Therefore, Tri-County's pleadings fail with respect to alleging facts in support of the essential finding of a product market. More particularly, because the product market is limited to certain Ivoclar Vivadent trademarked products (*i.e.*, a single brand), it does not constitute a legally cognizable product market without further evidence of uniqueness to the market of these products to the extent that they can be considered a market unto themselves, facts which the counterclaims clearly do not allege.   Lastly, counterclaim defendants argue that "the fatal consequences of Tri-County's failure to allege a product market become crystal clear when one attempts to answer the second, fundamental antitrust inquiry: Do the counterclaim defendants have market power?". (Dkt. #24-2, pp. 15 - 16).   Tri-County failed to allege that counterclaim defendants possessed market power and, without such, there is no antitrust violation because consumers are able to switch to a competitor's product in the event of a manufacturer's implementation of an anticompetitive restraint.

The Court rejects Tri-County's argument that counterclaim defendants' conduct should be viewed as horizontal in nature (or that Tri-County has properly

---

[13] "The 'geographic market' is simply the geographic area where the competition occurs." *E&L Consulting, Ltd*. v. *Doman Industries Ltd.,* 360 F.Supp.2d 465, 471 (E.D.N.Y. 2005), *quoting, Beyer Farms, Inc.* v. *Elmhurst Dairy, Inc.,* 142 F.Supp.2d 296, 303 (E.D.N.Y.2001), *aff'd,* 35 Fed.Appx. 29 (2d Cir.2002) (other citations omitted).

pled such), subjecting it to a *per se* illegal analysis.  *See, Business Electronics Corp.* v. *Sharp Electronics Corp.,* 485 U.S. 717, 724 - 30 (1988) [14]; *Oreck Corp.* v. *Whirlpool Corp.,* 579 F.2d 126, 131 (2d Cir. 1978)[15].  Rather, the Court agrees with counterclaim defendants' arguments and finds that the counterclaims are defective and must be dismissed, primarily because they claim fail to allege or define the product market.

First, it must be noted that exclusive distributorship arrangements are presumptively legal.  *Electronics Commc'ns. Corp.* v. *Toshiba America Consumer Prod., Inc.,* 129 F.3d 240, 245 (2d Cir.1997).  To overcome this presumption of legality, it must be alleged that the exclusive distributorship causes harm to competition because it prevents competitors from getting their products to consumers altogether.  *United States* v. *Visa U.S.A.*, Inc., 344 F.3d 229, 242 (2d Cir.

---

[14] Rejecting a *per se* rule and applying the Rule of Reason analysis.  A restraint is not horizontal because it has horizontal effects but rather because it is the product of a horizontal agreement, *i.e.,* a restraint imposed by agreement between competitors.  *Business Electronics*, at 730.  The horizontal effect approach "is of course a conceivable way of talking, but if it were the language of antitrust analysis there would be no such thing as an unlawful vertical restraint, since all anticompetitive effects are by definition horizontal effects." *Id.* at fn 4.

[15] "It is important to distinguish between 'horizontal' restraints, i. e. agreements between competitors at the same level of market structure, and 'vertical' restraints, i. e. combinations of persons at different levels of the market structure, such as manufacturers and distributors. Horizontal restraints alone have been characterized as 'naked restraints of trade with no purpose except stifling competition' and, therefore, *per se* violations of the Sherman Act.  On the other hand, while vertical restrictions may reduce intrabrand competition by limiting the number of sellers of a particular product, competing for a given group of buyers, they also promote interbrand competition by allowing a manufacturer to achieve certain efficiencies in the distribution of its products.  They are, therefore, to be examined under the Rule of Reason standard."(internal citations omitted).

2003).  This is not a question in a vacuum, involving only the parties and the

products at issue in this suit.  "[T]he proper inquiry is whether there has been an

'actual adverse effect on competition as a whole in the relevant market.'" *Ibid.,*

*quoting K.M.B. Warehouse Distrib., Inc.* v. *Walker Mfg. Co.*, 61 F.3d 123 (2d Cir.

1995).  As stated, *supra,* the relevant market looks at the overall product market

within a geographical area.

> "With respect to product market, '[i]f a complaint fails
> to allege facts regarding substitute products, to
> distinguish among apparently comparable products, or
> to allege other pertinent facts relating to cross-elasticity
> of demand $_{***}$ a court may grant a Rule 12(b)(6)
> motion.'"

*E&L Consulting, Ltd.* v. *Doman Indus. Ltd.,* 360 F.Supp.2d 465, 472 (E.D.N.Y.

2005)(internal citation omitted).  The Court construes this to provide for dismissal

under FRCvP 12(c) as well.  *See, Patel, supra; Irish Lesbian & Gay Org.*, *supra;*

*Sheppard, supra; Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n, supra.*

The products at issue are of a single brand, *i.e.,* certain enumerated Ivoclar

Vivadent trademarked dental apparatus.  The counterclaims do not allege that the

products at issue are in any way unique to the market of dental supplies, that

there is an absence of comparable or substitute products, or that they are

essential for Tri-County (who clearly sells a wide variety of dental products) to

compete in the industry.[16] The antitrust claims fail to plead facts even suggesting

---

[16] This is also referred to as cross-elasticity of demand or market power.  "Retail
(continued...)

"some type of harm to competition market-wide" *(E&L Consulting, Ltd., supra* at 475) and Counts II, III, IV and VII of Tri-County's counterclaims will therefore be dismissed.  Tri-County will be granted leave to amend.

With respect to the counterclaim alleging tortious interference with business relations (Count V), it fails to plead the essential facts in support of such a claim and will be dismissed.  A claim of this nature is very difficult to sustain and must therefore meet very demanding pleading and proof requirements.  *See, G.K.A. Beverage Corp.* v. *Honickman,* 55 F.3d 762, 768 (2d Cir. 1995)(outlining four distinct elements which must be alleged in order to sustain such a claim); *Kramer* v. *Pollock-Krasner Found.,* 890 F. Supp. 250, 258 (S.D.N.Y. 1995)(demanding requirements).  The Court will not address these requirements in detail, but has considered them and hereby finds that Tri-County has failed to satisfy any of them and its claim will therefore be dismissed.  Tri-County will be granted leave to amend.

With respect to the counterclaim alleging civil conspiracy (Count VI), the Court finds that it contains only bare bones allegations of conspiracy without any supporting facts and will also be dismissed.  *See, Heart Disease Research Found.* v. *General Motors*, 463 F.2d 98, 100 (2d Cir. 1972); *Floors-N-More, Inc.* v. *Freight*

---

[16](...continued)

market power is rare, because of the usual presence of interbrand competition and other dealers *(see Continental T.V., Inc.* v. *GTE Sylvania Inc.,* 433 U.S. 36, 54, 97 S.Ct. 2549, 2559-60, 53 L.Ed.2d 568 (1977)) and it should therefore not be assumed but rather must be proved." *Business Electronics Corp., supra*, 475 U.S. at 727, fn 2.

*Liquidators,* 142 F. Supp.2d 496, 501 (S.D.N.Y. 2001).  Tri-County will be granted leave to amend.

In the event that Tri-County files amended counterclaims, the Court will issue an amended scheduling order and will consider any renewed discovery motions at that time.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the counterclaim defendants' motion (Dkt. #24) to dismiss Tri-County's counterclaims is **GRANTED** and, because the claims in the Amended Complaint have been resolved (see, Dkt. #29), the pending motions regarding discovery (Dkt. #30 and #35) are hereby **DENIED** as moot.  Tri-County shall have 30 days from the filing of this order to amend the counterclaims and, failing that, the clerk of the Court is directed to take steps to close this case.

DATED:      Buffalo, N.Y.

August 21, 2006

_____
           */s/ John T. Elfvin*
           JOHN T. ELFVIN
           S.U.S.D.J.